AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Two blue Samsung Android cellphones<br>as described in Attachment A | )<br>)<br>)　　Case No.　3:25-mc-429<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Two blue Samsung Android cellphones as described in Attachment A hereto, currently located in Drug Enforcement Administration Portland District Office is securely stored at 100 SW Main Street, Suite 500, Portland, Oregon, 97204

located in the _____ District of _____Oregon_____, there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ (a)(1), (b)(1)(B) | Possession with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 843(b) | Use of a Communication Facility |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☒ Continued on the attached sheet.
☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Alexander Laub, SA, DEA
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
\_\_\_Telephone at \_4:34pm\_ a.m./p.m. _____ *(specify reliable electronic means)*.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Stacie F. Beckerman*

Date: April 16, 2025
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Judge's signature*

City and state:　Portland, Oregon　　　　　　　　　　Stacie F. Beckerman, United States Magistrate Judge
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Printed name and title*

## ATTACHMENT A-1

## Devices to Be Searched

1. The devices to be searched is a **Blue Android Cellphone**, listed as DEA case # RF-24-0019, exhibit #N-54 and is currently stored in a temporary evidence locker on the premises of the DEA Portland District Office, located at 100 SW Main St, Portland, Oregon.



**Attachment A-1**

# ATTACHMENT A-2

## Devices to Be Searched

1.      The devices to be searched is a **Blue Android Cellphone**, listed as DEA case # RF-24-0019, exhibit #N-55 and is currently stored in a temporary evidence locker on the premises of the DEA Portland District Office, located at 100 SW Main St, Portland, Oregon.



**Attachment A-2**

**ATTACHMENT B**

**Items to Be Seized**

1. All records on or within the **Target Cell Phones** as described in Attachments A-1-A-2 related to violations of Title 21, United States Code, Sections 841(a)(1), Possession with Intent to Distribute Controlled Substances; and Title 21, United States Code, Sections 843(b), Use of a Communication Facility.

   a. Lists of customers and related identifying information.

   b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.

   c. Information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

   d. Information recording the Device's schedule or travel from October 1, 2023 to the present.

   e. Bank records, checks, credit card bills, account information, and other financial records dating from January 1, 2025, to the present.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. Records evidencing the use of the Internet, including:

   a. Records of Internet Protocol addresses used from January 1, 2025, to the present.

   b. Records of Internet activity, including firewall logs, caches, browser

history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses dating from January 1, 2025, to the present.

        c.      Records of data storage accounts and use of data storage accounts.

4. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## Search Procedure

5. The examination of the Devices may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

6. The initial examination of the Devices will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

7. If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Device or image do not contain any data falling within

the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8. If an examination is conducted, and it is determined that the Devices do not contain any data falling within the ambit of the warrant, the government will return the Devices to their respective owner(s) within a reasonable period of time following the search and will seal any image of the Devices, absent further authorization from the Court.

9. The government may retain the Devices as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Devices and/or the data contained therein.

10. The government will retain a forensic image of the Devices for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

DISTRICT OF OREGON, ss:                AFFIDAVIT OF ALEXANDER LAUB

### Affidavit in Support of an Application for a Search Warrant for a Phone

I, Alexander Laub, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been since October 2020.  As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law, particularly those found in Title 18 and Title 21 of the United States Code.  I have received specialized training from the DEA, to include a 14-week Basic Agent Training course and other training courses.  I have been involved in conducting long-term, international, and complex conspiracy investigations.  Prior to my assignment to the Portland District Office, I spent approximately four years as a law enforcement officer with the Crystal Lake Police Department in Illinois.  I am familiar with investigations of drug trafficking organizations (hereinafter, "DTOs"), including identifying methods of importation and distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed.  I am also familiar with various tactics used by DTOs to import drugs into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of drugs.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search and examination of two blue Samsung Android cellphones, as further described in Attachments A1-A2 (hereinafter "**Target Cellphones**") and were seized in the District of Oregon. **Target Cellphones** are currently in law enforcement custody at the Drug Enforcement Administration Portland District Office is securely stored at 100 SW Main Street, Suite 500, Portland, Oregon, 97204. As set forth below, I

Page  1  – Affidavit of Alexander Laub

have probable cause to believe and do believe that the items set forth in **Attachment B** constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 843(b), that is Possession with Intent to Distribute Controlled Substances and Use of a Communication Facility.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

**Applicable Law**

4.      Title 21, United States Code, Sections 841(a)(1) makes it a crime to distribute and possess with intent to distribute controlled substances. Title 21, United States Code, Section 843(b) makes it a crime to use of a communications facility in furtherance of a drug trafficking offense.

**Background of Investigation**

5.      In February 2025, DEA Portland District office was investigating "Frankie" a downtown fentanyl dealer who was subsequently arrested for distribution of fentanyl. During the initial arrest of "Frankie", investigators detained other parties that were involved in the distribution of fentanyl. During the initial search, investigators located numerous pieces of paper that were cut into business card sizes with numerous phone numbers and names listed on them. One of the pieces of paper had phone number XXX-XXX-7895 [1] (Subject Phone-7895) with the name "Wilbur

---

1 Although I know the full phone number, I am intentionally excluding it from this affidavit that

Page 2 – Affidavit of Alexander Laub

(Hondo)" written above the phone number (as seen in the photo below). Based on my training knowledge and experience, I know that Honduran national fentanyl distributors have often utilized the "business card" technique to quickly spread their phone numbers to large audiences to obtain more drug business.

6. On April 1, 2025, a DEA agent acting in an undercover capacity began communicating with Wilbur over Subject Phone-7895 via text communication over a recorded application. The conversation began with the UC advising he obtained Wilbur's phone number in downtown Portland. The UC and Wilbur agreed to a price for a half ounce of fentanyl powder for $500.

7. On April 8, 2025, the Honorable U.S. Magistrate Judge Jolie A. Russo authorized a geo-location warrant for Subject Phone-7895. Later during the same day, investigators began collecting geo-location information for Subject Phone-7895 and observed it to be near Hammond, Louisiana. Due to "Wilbur" being in Louisiana, investigators believe he is operating a dispatch style DTO, where he receives the phone calls and directs Portland, Oregon based couriers to the drug transactions.

## Arrest 14, 2025 – Arrest of CALIX GAMEZ

8. On April 14, 2025, the DEA UC agent began communicating with Wilbur via Subject Phone-7895 regarding the purchase of a half-ounce of fentanyl powder for $500. The UC and Wilbur agreed to a meeting near Mall 205 in Portland, OR for approximately 1:30 p.m. At approximately 1:52 p.m., the UC advised they were "here", and Wilbur responded saying "10 minutos" (minutos is minutes in Spanish). The UC continued to communicate with Wilbur and to attempt to locate one another. At 2:14 p.m., Wilbur sent a google maps link for the 9700 block of

---

may become a part of the public record at some point.

Page 3 – Affidavit of Alexander Laub

SE Oak St, Portland, Oregon and advised the UC to go there. Investigators observed that the new meeting spot was less than half of a mile from the original agreed upon location. Based on my training knowledge and experience I know DTO members will often change locations to move any potential law enforcement in the area and to further vet the buyer.

9. The UC and other DEA investigators proceeded to the new location. At approximately 2:25 p.m., investigators observed a Hispanic male wearing a tan jacket with bulging pockets and blue jeans walk across the street from the UC's vehicle while speaking on the phone while using his wired headphones. Immediately after the UC received a text message saying "No, you are a police officer" and later a phone call from Wilbur, stating they observed multiple vehicles and did not want to work with the UC any longer. Based on the timing of the Hispanic male speaking on his phone and Wilbur then calling the UC, investigators believe that male who was later identified as Paulino CALIX GAMEZ was working in conjunction with Wilbur.

10. Investigators maintained visual surveillance on CALIX as he walked southbound across SE Stark to an Elmers's restaurant. Investigators momentarily lost visual but relocated CALIX near the Elmers wearing the same clothing still believed to be speaking on his cellphone. Investigators maintained surveillance until CALIX entered a Silver Toyota Camry (CMB2034/WA) that was parked north of where investigators originally observed him. Investigators proceeded to follow the Camry based on the belief that he was the courier working for Wilbur that was supposed to supply the UC with fentanyl powder.

11. Investigators continued surveillance of the Camry until CALIX parked near 1927 SW 4th Ave, Portland, Oregon. CALIX remained in his vehicle for several minutes with no movement before a white male subject wearing a black hat, gray sweatpants and a black backpack approached the passenger side door of the Camry and entered without hesitation. The white male

(ADULT MALE 1) who was later identified, exited the Camry and walked westbound through the parking lot. Investigators proceeded to detain both ADULT MALE 1 and CALIX based on the belief that a drug transaction had just occurred.

12. Investigators advised ADULT MALE 1 of his Miranda rights. ADULT MALE 1 advised he understood his rights and was willing to speak. Investigators explained to ADULT MALE 1 why he was being stopped and subsequently consented to a search of his pockets for the drugs. ADULT MALE 1 told investigators the drugs he purchased from the courier (CALIX) were in his front, left pants pocket. Investigators retrieved the substance from ADULT MALE 1's front, left pants pocket and observed two separate plastic bags which were tied off at the end that contained a pressed, white powdery substance.

13. ADULT MALE 1 admitted to paying $2,550 for the white powdery substance, believed to be fentanyl powder. ADULT MALE 1 admitted the drug transaction took place in CALIX's vehicle, the silver Toyota Camry. ADULT MALE 1 advised he calls a phone number and CALIX, the driver of the Toyota Camry, delivers the drugs.

### Search of the Camry

14. Investigators approached the Camry while wearing Police insignia with their vehicles emergency lights activated, the sole occupant of the vehicle (CALIX) was subsequently detained in handcuffs and removed from the vehicle. CALIX originally identified himself by a Mexican ID card with the name "Evans Gomez Rodriguez". Upon detaining CALIX, investigators observed a large rubber banded wad of money sitting in the center console of the Camry and two **blue Samsung cellphones (target cellphones)** After removing CALIX from the vehicle, a Spanish-speaking investigator explained to him that they were drug investigators and that they were conducting an investigation. CALIX gave verbal consent to search the Camry. Investigators

Page 5 – Affidavit of Alexander Laub

asked CALIX for his real name, and he replied, "Paulino CALIX Gamez" and stated that he was Honduran, not Mexican like his identification card stated. Investigators located a black backpack in the backseat with two more banded wads of money and clear plastic baggies containing pressed white powder and a digital scale concealed underneath the gear shift.

15. The money, cellphones and pressed white powder were seized as evidence. The pressed white powder located from ADULT MALE 1 and within the Camry were field tested leading to a presumptive positive for fentanyl. The gross gram weight for the pressed white powder totaled 222.4 gross grams and was subsequently sent to the DEA laboratory for further analysis. ADULT MALE 1 was released from the scene pending further investigation, CALIX was taken back to the DEA office for arrest processing and detainment at the Multnomah County Detention Center.

16. In total investigators located and seized **two Target Cellphones** from CALIX. Investigators do not know the phone numbers for CALIX's two **Target Cellphones** but believe that the **Target Cellphones** were used to communicate with Wilbur or other DTO members which directed him to the attempted UC purchase as well as downtown Portland for the drug transaction with ADULT MALE 1. Investigators placed the **Target Cellphones** on a charger in a faraday box in order to best preserve its state at the time of seizure.

17. Based on my training, knowledge and experience, I am aware that narcotics distributors and their customers employ their cellphones when establishing and arranging the details for a narcotics transaction. Additionally, I know DTO members will often utilize numerous cellphones to separate who they are speaking with. I know that cellphones contain records of text messages and voice calls that can be evidence of the Target Offenses. I believe a search of the **Target Cellphones** will result in the discovery and seizure of records constituting records of these

Page 6 – Affidavit of Alexander Laub

drug transactions, locations and identifiers for local sources of supply, and fruits of said drug transactions.

18.    The **Target Cellphones**, as described in Attachments A1-A2, are currently in law enforcement custody at the Drug Enforcement Administration at 100 SW Main Street, Suite 500, Portland, Oregon. In my training and experience, I know that the **Target Cellphones** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Target Cellphones** first came into the possession of the DEA.

19.    Based on my training and experience, a wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. The cellphones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; recording, storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet,[2] including the use of apps.[3]

---

[2] The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

[3] Apps is an abbreviation for applications. An app is a self-contained program or piece of software designed to fulfill a particular purpose. An app can run on the Internet, on a computer, on a cell phone, or on other electronic devices.

Page 7 – Affidavit of Alexander Laub

Wireless telephones may also include a global positioning system ("GPS") technology for determining the location of the device.

20. Based on my training, experience, and research, I know the **Target Cellphones** have capabilities that allow it to serve as wireless telephone, digital camera, portable media player, and GPS navigation device. In my training and experience, examining data stored on wireless telephones can uncover, among other things, evidence that reveals or suggests who possessed or used the phones, how the phones were used, and the purpose of their use.

21. As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the **Target Cellphones** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the **Target Cellphones** because, based on my knowledge, training, and experience, I know:

    a. **Target Cellphones** can store information for long periods of time, including information viewed via the Internet. Files or remnants of files can be recovered with forensic tools months or even years after they have been downloaded onto a phone, deleted, or viewed via the Internet. Electronic files downloaded to a phone can be stored for years at little or no cost. When a person "deletes" a file, the data contained in the file does not actually disappear, rather that data remains on the phone until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the phone that is not currently being used by an active file—for long periods of time before

Page 8 – Affidavit of Alexander Laub

    they are overwritten. In addition, the operating system may also keep a record of deleted data.

b.  Wholly apart from user-generated files, **Target Cellphones** may contain electronic evidence of how it has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating systems or application operations, and file system data structures.

c.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

d.  Data on **Target Cellphones** can provide evidence of a file that was once on **Target Cellphones** but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Systems can leave traces of information on the **Target Cellphones** that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the **Target Cellphones** that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, including SD cards or other flash media, and the times the **Target Cellphones** was in use. File systems can record information about the dates files were created and the sequence in which they were created.

e.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

**Page 9 – Affidavit of Alexander Laub**

    f.     A person with appropriate familiarity with how the **Target Cellphones** works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the **Target Cellphones** were used, the purpose of its use, who used it, and when.

    g.     The process of identifying the electronically stored information necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on the **Target Cellphones** are evidence may depend on other information stored on the **Target Cellphones** and the application of knowledge about how a **Target Cellphones** functions. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    h.     Further, in order to find evidence of how the **Target Cellphones** were used, the purpose of its use, who used it, and when, the examiner may have to establish that a particular thing is not present on the **Target Cellphones**.

22.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Cellphones** consistent with the warrant. The examination may require authorities to employ techniques, including imaging the **Target Cellphones** and computer-assisted scans and searches of the entire **Target Cellphones** that might expose many parts of the device to human inspection in order to determine whether it constitutes evidence as described by the warrant.

23.    The initial examination of the **Target Cellphones** will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the

government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

24. If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the **Target Cellphones** or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

25. If an examination is conducted, and it is determined that the **Target Cellphones** does not contain any data falling within the ambit of the warrant, the government will return the Phone to its owner within a reasonable period of time following the search and will seal any image of the Phone, absent further authorization from the Court.

26. If the **Target Cellphones** contains evidence, fruits, contraband, or is an instrumentality of the crime, the government may retain the Phone as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Phone and/or the data contained therein.

27. The government will retain a forensic image of the **Target Cellphones** for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting

claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

28.   *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

29.   Based on the foregoing, I have probable cause to believe, and I do believe, that the **Target Cellphones** as described in **Attachment A1-A2** contain evidence of the violations as set forth above and in **Attachment B**. I therefore request that the Court issue a warrant authorizing a search of the **Target Cellphones** described in **Attachment A1-A2** for the items listed in **Attachment B** and the seizure and examination of any such items found.

30.   Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Kate Rochat, and AUSA Rochat advised me that in his opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

          Sworn to by telephone
          Alexander Laub
          DEA Special Agent

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 4:34 p.m. on April 16, 2025.

*Stacie F. Beckerman*

HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge